IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME TIMMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| DATA SEARCH N.Y., INC. | ) |
| d/b/a TRAK AMERICA, LLC | ) |
| and TRAK AMERICA, | ) |
| and NORTH STAR CAPITAL | ) |
| ACQUISITION LLC, | ) |
| | ) |
| Defendants. | ) |

**FILED**
**MARCH 5, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

PH   **08 C 1321**

**JUDGE ANDERSEN**
**MAGISTRATE JUDGE VALDEZ**

## COMPLAINT

### INTRODUCTION

1.      Plaintiff Jerome Timms brings this action to secure redress from unlawful credit and collection practices engaged in by defendant Data Search N.Y., Inc. d/b/a Trak America, LLC and Trak America ("Trak America") and North Star Capital Acquisition LLC ("North Star"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), and state law.  The FDCPA broadly prohibits unfair or unconscionable collection methods;  conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

### VENUE AND JURISDICTION

2.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28  U.S.C.

§1331, 28 U.S.C. §1337 and 28 U.S.C. §1367.

3. Venue and personal jurisdiction in this District are proper because:

   a. Defendants' collection communications were received by plaintiff within this District;

   b. Defendants do or transact business within this District.

## PARTIES

4. Plaintiff is an individual who resides in the Northern District of Illinois.

5. Defendant Data Search N.Y., Inc. d/b/a Trak America, LLC or Trak America ("Trak America") is a New York corporation. Its principal place of business is located at 6851 Jericho Turnpike, Suite 190, Syosset, NY 11791.

6. Trak America describes its business activities on its web site (www.trakamerica.com) as follows:

> Welcome to the proven nationwide legal process that has recovered millions of dollars thought to be unrecoverable for the country's largest creditors and debt buyers.
>
> Step 1: Our FASTRAK predictive model determines with unparalleled accuracy exactly which accounts are worth pursuing.
>
> Step 2: Secure, streamlined and automated processes transmit suit worthy accounts to the right attorney quickly and efficiently.
>
> Step 3: The TRAKAmerica legal network—the best in the business—obtains your legally enforceable judgments.
>
> Step 4: Our in-house skip tracing experts facilitate execution on your judgments by identifying hard-to-find assets and collecting the money owed to you.
>
> Result: **Maximum net back for TRAKAmerica clients.**
>
> "TRAKAmerica recovered more than $27 million last quarter on warehouse paper we thought was uncollectible."

— Publicly traded US credit card issuer

7.    The same web site further states:

TRAKAmerica is a rapidly growing legal network management company founded in 2000. With its unique approach, the company has been able to recover millions of dollars previously believed to be unrecoverable for some of the most astute lenders in the world. The company's success is built on a nationwide network of local attorneys combined with a rigorous analytic approach to managing thousands of accounts.

TRAKAmerica's unique advantage is the FASTRAK predictive model built on empirical data from more than one million claims and nearly $100 million in court costs in all fifty states. Combining FASTRAK with vigorous attorney management maximizes net back for TRAKAmerica's clients.

8.    The same web site further states:

Disciplined Attorney Management

To keep our attorneys as productive as possible TRAKAmerica takes a hands-on approach. With over 125 firms nationwide in our network, TRAKAmerica treats legal management as a high volume production operation. We follow a streamlined management process to get your accounts into the courts faster.

From our database of more than a million claims we know exactly what to expect in terms of suit and judgment rates, and we manage our attorneys to these expectations. Overall performance is managed at the batch level and reviewed weekly. Work assignments are reviewed frequently and business shifts are made based on performance.

Because FASTRAK indicates which accounts to sue, we only forward productive accounts to our attorneys, with the cut-off calibrated by client to achieve individual client IRR and net back goals. As a result, our attorneys don't waste their time and your money on unproductive cases.

9.    The same web site further states:

Step 2: Getting To Court Quickly and Efficiently

Once we've run your portfolio through our model and reviewed the net back projections, our TRAKAmerica team designs a complete recovery plan based on your requirements.

First, we prepare your portfolio for our attorney network by identifying suit worthy accounts and skip tracing them for accuracy (addresses, names etc.). As we verify information, we also attempt to collect from these accounts on your behalf.

As a legal network, we can use legal talk off language in these conversations, which often means debtors agree to a payment plan rather than face the legal process.

This immediately creates cash flow for you and also helps fund court costs on accounts that ultimately will go through the legal process.

Step 3: The TRAKAmerica Legal Network

On day 31, we electronically disburse your files to our network attorneys. They load your files into their systems and instantly send demand letters.

After the 30-day validation period expires, our attorneys sue those individuals who have not responded to their demand letters. Results are electronically posted and delivered to our offices each week.

It's an entirely transparent system for full accountability. Each week, our management team examines exception reports that reflect which accounts are still outstanding. The report includes:

- legal suit dates
- service dates
- court information
- judgment information (principle [sic] and interest)
- court costs
- attorney fees

Our clients have the option of connecting electronically to our reporting system so they can check on the status of their portfolio at any time.

Our collection firms also follow our no-fail data security measures, including firewall intrusion detection software, encryption, and stringent internal security control systems.

Step 4: Collecting and Disbursing Your Money

At this stage, our TRAKAmerica team has obtained judgments on your bad debt accounts. We dedicate our efforts and resources—including in-house skip tracing and asset location programs—to collecting the money owed to you.

Skip and asset information is promptly supplied to our attorneys so they can devote their time to collecting from bank accounts, garnishing paychecks, and placing liens on properties.

We are no longer requesting money from debtors—we are actively taking it. . . .

10. The mails and interstate wire communications are used to conduct the business of Trak America.

11. Trak America is a debt collector as defined in the FDCPA.

12. Defendant North Star Capital Acquisition LLC is a limited liability company with offices at 220 John Glenn, Ste. 1, Amherst, NY 14228.

13. Defendant North Star is engaged in the business of purchasing alleged charged-off consumer debts and attempting to collect them from the consumers.

14. On information and belief, defendant North Star pays less than ten cents on the dollar for the debts it purchases.

15. Defendant North Star has been the plaintiff in more than 300 collection lawsuits in the Illinois courts.

16. Defendant North Star uses the mails and interstate wire communications to collect debts.

17. Defendant North Star is a debt collector as defined in the FDCPA.

18. Defendant North Star is one of the companies that use the services of Trak

America, described above.

## FACTS

19.  On June 22, 2007, Mr. Timms filed a Chapter 7 petition in the United States Bankruptcy Court for the Northern District of Illinois, case 07 B 11217. The relevant portions of the petition are attached as Exhibit A.

20.  Among the debts scheduled was an $886 debt to Wells Fargo with an account number ending in 69775830.

21.  Wells Fargo was duly notified by the Bankruptcy Court (Exhibit B).

22.  On September 25, 2007, Mr. Timms was granted a discharge, of which Wells Fargo was also notified. (Exhibit C)

23.  A month and a half later, on November 8, 2007, North Star Capital filed suit against Mr. Timms in the Circuit Court of Cook County, Illinois, case no. 07 M1 212537, based on the Wells Fargo debt, which North Star claimed to have purchased.

24.  Attached to the complaint (Exhibit D) was an "affidavit" which was purportedly executed by an "agent" of North Star. (Exhibit E) The account number on the second page of Exhibit E ends 69775830, establishing that the debt was the same as was discharged.

25.  Investigation discloses that the affiant and notary are in fact employed by Data Search N.Y., Inc., d/b/a Trak America, an organization with offices in New York, Virginia, and Florida which describes itself (www.trakamerica.com) as a "legal network management company" that has "a nationwide network of local attorneys" consisting of "over 125 firms nationwide". Trak America "treats legal management as a high volume production operation"

and "follow[s] a streamlined management process to get your accounts into the courts faster." Trak America claims that " we prepare your portfolio for our attorney network by identifying suit worthy accounts and skip tracing them for accuracy (addresses, names etc.)."  "We are no longer requesting money from debtors—we are actively taking it. . . . "

26.     As part of this "high volume production operation," Trak America generates affidavits purporting to be from an "agent" of the plaintiff.  The affidavits claim that the signer "can testify at trial as to all facts pertaining to this matter" and that "there remains a balance due on this account in the amount of $------."  In the case of Mr. Timms the number inserted was $999.

27.     In fact, the affiant is not employed by either North Star or its alleged predecessor, Wells Fargo, and knows nothing about the facts relating to the debts, which in this case included the rather significant fact that the debt had been discharged in bankruptcy and was not owed.

28.     Trak America routinely churns out these perjured form affidavits, which are then filed under the name of another, in this case North Star.  Trak America does not disclose its involvement, which would immediately raise the question of how an employee of Trak America could possibly testify about a debt that was owned by Wells Fargo and was allegedly sold to North Star.

29.     A void judgment was entered on December 20, 2007 based on substituted service.  The judgment has now been vacated and the case dismissed.

30.     Contrary to the statements in the affidavit, employees of Trak America cannot "testify at trial" to anything.

31. Exhibit E does not disclose the fact that the signatory is an employee of Trak America.

32. By describing the affiant as an "agent" of the putative debt owner, here North Star, without identification of the company for which the affiant works, Exhibit E conceals the identity of the business preparing the document, Trak America, and appears to come from the alleged owner of the debt, North Star.

33. The mails and interstate wire communications are used to send affidavits in the form represented by Exhibit E.

## COUNT I – FDCPA

34. Plaintiff incorporates paragraphs 1-33.

35. The FDCPA, 15 U.S.C. §1692e, states:

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

> **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**
>
> **(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization. . . .**

36. The statement in the complaint and affidavit that plaintiff owes money are false.

37. The statement in the affidavit that employees of Trak America can testify to the facts is false.

38. Exhibit E does not disclose the fact that the signatory is an employee of

8

Trak America.

39. By describing the affiant as an "agent" of North Star, without identification of the company for which the affiant works, Exhibit E conceals the identity of the business preparing the document, Trak America, and amounts to the use by Trak America of a business, company, or organization name ("North Star") other than the true name of the debt collector's business, company, or organization.

40. By filing Exhibit E in its lawsuit, North Star participated in the fraudulent practices and violated 15 U.S.C. §1692e.

41. As a result of the fraudulent complaint and affidavit, plaintiff was damaged in that he was deprived of a "fresh start," was forced to retain counsel to vacate the judgment, and suffered injury to credit.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendants for:

(1) Statutory damages;

(2) Actual damages;

(3) Attorney's fees, litigation expenses and costs of suit;

(4) Such other and further relief as the Court deems proper.

### COUNT II – ILLINOIS CONSUMER FRAUD ACT

42. Plaintiff incorporates paragraphs 1-33.

43. Defendants engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by:

b. Suing plaintiff on a discharged debt;

    c. Filing a fraudulent affidavit to support such action;

    d. Concealing the involvement of Trak America.

  44. As a result of the fraudulent complaint and affidavit, plaintiff was damaged, in that he was deprived of a "fresh start," was forced to retain counsel to vacate the judgment, and suffered injury to credit.

  45. The conduct of North Star and Trak America was intentionally fraudulent and malicious, warranting substantial punitive damages.

  WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendants for:

    (1) Actual damages;

    (2) Punitive damages;

    (3) Attorney's fees, litigation expenses and costs of suit;

    (4) Such other and further relief as the Court deems proper.

    s/Daniel A. Edelman
    Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
 & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiff demands trial by jury.

                                                      s/Daniel A. Edelman
                                                    Daniel A. Edelman

**NOTICE OF LIEN**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\20912\Pleading\Complaint  --  DAE_Pleading.wpd